IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America ) | |
| ) | Case No. 09-cr-332-4 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| Jorge Uriarte ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Jorge Uriarte's ("Jorge")[1] second motion under 18 U.S.C. § 3582(c)(1)(A)(i) for compassionate release, together with supplemental briefs and prison medical and disciplinary records. Jorge has served more than 15 years of his 40-year mandatory minimum sentence, 30 years of which resulted from the "stacking" in a single indictment of two firearms charges under 18 U.S.C. § 924(c). In the instant motion, Jorge argues that his medical condition and the disparities between his very long sentence and the shorter sentences more culpable co-defendants received justify reducing his term of imprisonment to the 15 years he has served.

### Background

This case's facts and complicated procedural history have been chronicled extensively in prior opinions. *See, e.g.*, *United States v. Cardena*, 842 F.3d 959, 970–72 (7th Cir. 2016); *United States v. Sparkman*, 973 F.3d 771, 772–73 (7th Cir. 2020). Recapping briefly, Jorge and ten co-defendants faced a litany of charges stemming from their participation in a long-running (1998–2009) racketeering and drug-trafficking enterprise conceived, orchestrated, and directed by co-defendant Saul Rodriguez ("Rodriguez"). *See generally* Third Superseding Indictment, ECF No. 274. The "Rodriguez crew," in the government's parlance, perpetrated numerous serious crimes. They usually targeted Chicago-area drug dealers and sometimes their family members.

---

[1] The court refers to Jorge by his first name to distinguish him from his brothers and co-defendants, Hector and Manuel Uriarte.

Following an approximately 11-week trial, a jury convicted Jorge and his co-defendants (the jury deadlocked as to Manuel Uriarte) in 2012. This court sentenced Jorge and the other defendants charged with § 924(c) violations (Hector Uriarte and Tony Sparkman) at or above the then-42-year mandatory minimum. On appeal in 2016, the Seventh Circuit affirmed defendants' convictions but remanded the case to resentence Jorge, Hector Uriarte, and Tony Sparkman under an intervening Supreme Court decision, *Alleyne v. United States*, 570 U.S. 99 (2013), which decreased the mandatory minimum sentences from 42 to 40 years.[2]

On remand, accidents of timing produced, in the words of then-Judge Barrett, "problematic disparities." *United States v. Hector Uriarte*, 975 F.3d 596, 610 (7th Cir. 2020) (Barrett, J., dissenting). Effective December 20, 2018, the First Step Act of 2018 eliminated, non-retroactively, the statutory authority to "stack" two or more § 924(c) charges in one indictment, such that after the Act's passage, Jorge's mandatory minimum sentence would be 15 years. However, Jorge did not benefit from the First Step Act because his re-sentencing on remand was held on November 16, 2018, approximately six weeks before the First Step Act was passed. Due to unrelated delays and the outbreak of the COVID-19 pandemic, Jorge's co-defendants, Hector Uriarte and Tony Sparkman, received the benefit of the First Step Act. Each received a sentence 20 or more years shorter than Jorge's sentence.

**Analysis**

To obtain compassionate release, Jorge must satisfy the Seventh Circuit's two-step test. *See United States v. Peoples*, 41 F.4th 837, 840 (7th Cir. 2022); *United States v. Sarno*, 37 F.4th 1249, 1252–53 (7th Cir. 2022). At step one, a defendant must identify "an 'extraordinary and compelling' reason warranting a sentence reduction." *Peoples*, 41 F.4th at 840 (quoting *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021)). If the defendant identifies such a reason, the court proceeds to the second step and "exercis[es] the discretion conferred by the compassionate

---

[2] *Alleyne* held that a brandishing enhancement had to be found by a jury; in this case, it had been applied at sentencing but never submitted to the jury. *Alleyne,* 570 U.S. at 101.

release statute, to consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *Id*. (alteration in original) (quoting *Thacker*, 4 F.4th at 576).

As his first extraordinary and compelling reason, Jorge argues that his medical condition, at the time he filed his second compassionate release motion, was serious enough to justify compassionate release. *See* Suppl. Reply 2–3, ECF No. 2162. Regardless of his condition and treatment, Jorge concedes that his medical condition is presently being adequately managed in Bureau of Prisons ("BOP") custody. Suppl. Mot. Compass. Release 3, ECF No. 2151. In light of Jorge's concession, his medical condition and treatment do not constitute extraordinary and compelling reasons under § 3582(c)(1)(A)(i).[3] *See United States v. Barbee*, 25 F.4th 531, 533 (7th Cir. 2022); *United States v. Broadfield*, 5 F.4th 801, 802–03 (7th Cir. 2021).

As his second reason for compassionate release, Jorge relies on the gross disparities between his 40-year sentence and the sentences of his co-defendants. As the probation officer who wrote Jorge's pre-sentence report put it and this court found, Jorge "was neither the least culpable of the participants, nor [more] culpable than most of them. Indeed, he was an average participant . . . ." J. Uriarte PSR 18:431–34, ECF No. 913. Jorge's 40-year prison sentence is not only decades longer than the sentence of his far more culpable brother Hector, but it is the longest any defendant received–matched only by the sentence of Saul Rodriguez, the acknowledged leader of the criminal organization at the center of this case.[4] This is manifestly contrary to one of the central purposes of the Sentencing Reform Act of 1984: avoiding

---

[3] In this court's view, the record has never supported a finding that Jorge's medical condition and treatment rose to the level of an extraordinary and compelling reason under § 3582(c)(1)(A)(i) because Jorge was never able to show that the treatment he was receiving from the BOP was inferior to what would be available were he not in custody. *See* ECF No. 2080 at 1.

[4] Hector Uriarte, Rodriguez's top lieutenant, having received the benefit of the First Step Act, was sentenced to twenty years. Rodriguez, who pleaded guilty and cooperated with the government (although his cooperation was significantly undermined by his continuing criminal conduct, even as he was ostensibly assisting the government) received an agreed sentence of 40 years.

unwarranted disparities among the sentences of similarly situated defendants. *See Mistretta v. United States*, 488 U.S. 361, 367 (1989).

Jorge made similar arguments in his first compassionate release motion. This court held that *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), foreclosed them. *See United States v. Jorge Uriarte*, No. 09-cr-332-4; Order at 2–4 (Aug. 18, 2021) (ECF No. 1999). In *Thacker*, the Seventh Circuit held that the changes made by the First Step Act to § 924(c) cannot constitute an extraordinary and compelling reason for a sentence reduction. *Thacker,* 4 F.4th at 576. In his second compassionate release motion, Jorge argues that *Concepcion v. United States*, 597 U.S. 481 (2022), and *United States v. Black*, 999 F.3d 1071 (7th Cir. 2021), undermine *Thacker*. *See* Status Report 1–2, ECF No. 2070; Mot. Reduce Sent. 3, ECF No. 2036. But the Seventh Circuit found this argument unpersuasive in *Peoples*, 41 F.4th at 842. Accordingly, *Thacker*, as reaffirmed in *Peoples*, continues to foreclose Jorge's reliance on the First Step Act's changes to § 924(c) as a basis for finding an extraordinary and compelling reason for compassionate release. *Thacker* is dispositive unless a change in the law abrogates it.

Effective November 1, 2023, the Sentencing Commission adopted for the first time a policy statement applicable to prisoner-filed motions for compassionate release; the Commission's previous policy statement applied only to motions filed by the BOP. *See United States v. Gunn*, 980 F.3d 1178, 1179–80 (7th Cir. 2020). The Sentencing Commission's 2023 policy statement on compassionate release states in part:

> (b) **Extraordinary and Compelling Reasons.**—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> \* \* \* \*
>
> (6) **Unusually Long Sentence.**—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be

imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6) (2023).

No party disputes that Jorge meets the § 1B.13(b)(6) criteria. He has served more than 10 years in prison (15), and by any reasonable measure, his 40-year sentence, effectively a life sentence,[5] is unusually long both in absolute terms and in terms of the sentences meted out to similarly situated and more culpable co-defendants. Thus, the question becomes how to resolve the conflict between amended § 1B1.13(b)(6) and *Thacker*. *See United States v. Black*, 2024 WL 449940, at *6–8 (N.D. Ill. Feb. 6, 2024).

Earlier this year, the parties extensively briefed several complex questions related to § 1B1.13. Under the law as it then existed, their briefing focused primarily on *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and how to analyze amended § 1B1.13 under *Chevron*'s two-step test. As it then stood, the *Chevron* doctrine rested on "a background presumption of congressional intent: namely, 'that Congress, when it left ambiguity in a statute' administered by an agency, 'understood that the ambiguity would be resolved, first and foremost, by the agency.'" *City of Arlington v. F.C.C.*, 569 U.S. 290, 296 (2013) (quoting *Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 740-41 (1996)). Courts applying *Chevron* used a two-step analysis. *See id.*; *Bankers Life & Cas. Co. v. United States*, 142 F.3d 973, 983 (7th Cir. 1998). At step one, the court asked "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter." *City of Arlington*, 569 U.S. at 296 (quoting *Chevron*, 467 U.S. at 842–43). At *Chevron's* second step, where Congress has not directly spoken to the question at issue, "the question for the court is whether the agency's answer" to the precise question posed "is based on a permissible [reasonable] construction of the statute." *Id.* (quoting *Chevron*, 476 U.S. at 843).

---

[5] The U.S. Sentencing Commission has defined a *de facto* life sentence as any sentence of imprisonment 470 months or longer. *See* U.S. Sentencing Commission, *Life Sentences in the Federal System*, at 16 (2022), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Life.pdf

5

Under the *Chevron* regime, district courts in the Seventh Circuit agreed that the statutory phrase "extraordinary and compelling" was ambiguous at *Chevron* step one, but they reached divergent decisions at step two: whether the Sentencing Commission's interpretation of that standard in § 1B1.13(b)(6) was reasonable. *Compare Black*, 2024 WL 449940, at *9–12, with *United States v. Spradley*, 2024 WL 1702873, at *6–8 (S.D. Ind. Apr. 18, 2024). There was also consensus under *National Cable & Telecommunications Ass'n. v. Brand X Internet Services*, 545 U.S. 967, 982 (2005), that if amended § 1B1.13 received *Chevron* deference, it would take precedence over *Thacker*. *See Black*, 2024 WL 449940, at *8.

Complicating matters further, on June 28, 2024, the Supreme Court overruled *Chevron* in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244. *Loper Bright* holds that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority . . . . [C]ourts need not and under the APA [the Administrative Procedure Act] may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 2273. Finally, the Court added that "when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." *Id.*

The case for upholding the Sentencing Commission's guidance in U.S.S.G. § 1B1.13(b)(6) under *Loper Bright* is compelling. Writing on a clean slate, this court would find it decisive in this case. But the Sentencing Commission is an anomalous agency, and the law is in flux. Further, in this circuit, *Thacker* is controlling authority.[6]

To date, the Fifth Circuit's decision in *United States v. Jean*, 108 F.4th 275 (2024), is the only appellate opinion analyzing, albeit in *dicta*, the 2023 version of § 1B1.13 post-*Loper Bright*. In *Jean*, the Fifth Circuit affirmed a grant of compassionate release to a defendant sentenced in 2007 as a career offender (292 months incarceration) for his involvement in a drug trafficking

---

[6] Because this case has been awaiting decision for a long time as changes in the law again and again have altered the relevant legal framework, and because the impact of *Loper Bright* on the Sentencing Commission is hardly clear, the court decided not to ask the parties to brief the effect of *Loper Bright* on this case.

6

conspiracy in the Houston area. *See id.* at 279. As extraordinary and compelling reasons, the district court relied on (1) the defendant's extraordinary rehabilitation and post-sentencing conduct, and (2) non-retroactive legal changes making the defendant, were he sentenced today, ineligible to be classified as a career offender, shortening his sentence by ten years. *See id.* at 279–81. The Fifth Circuit held that the district court did not abuse its discretion under circuit precedent. *See id.* at 282–87. However, the Circuit did not issue a binding decision construing the 2023 amendment to § 1B1.13 because it was "not in effect at the time the district court granted Jean's motion." *Id.* at 288. Nevertheless, the *Jean* court explained at length why its decision would be the same under the Sentencing Commission's amended policy statement in § 1B1.13, and why the Sentencing Commission acted within its statutory authority in 2023 when it amended § 1B1.13. *See id.* at 289–91.

When it passed the Sentencing Reform Act of 1984, Congress instructed the Sentencing Commission in mandatory terms to adopt a policy statement on compassionate release: "The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). "As the Supreme Court has recognized, because '[t]he Guidelines are of course implemented by the courts,' Congress, in charging the Commission with revision responsibility, 'necessarily contemplated that the Commission would periodically review the work of the courts and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest.'" *Jean*, 108 F.4th at 287 (quoting *Braxton v. United States*, 500 U.S. 344, 348 (1991)).

As described in *Jean*, *Thacker* represents one side of a circuit split over whether, and if so in what circumstances, non-retroactive changes in the law may be considered when deciding whether extraordinary and compelling reasons exist for compassionate release. *See id.* at 289 (collecting cases). In the course of articulating its amended policy statement in § 1B1.13, the Sentencing Commission engaged in an extensive notice and comment rulemaking process and

7

held public hearings. *See id.* After considering the views of the public, the federal courts of appeals, and stakeholders in the criminal justice system, the Sentencing Commission promulgated amended § 1B1.13(b)(6) for the express purpose of resolving this circuit split. *See id.* (quoting Commentary to U.S.S.G. § 1B1.13, 88 Fed. Reg. 28254 (May 3, 2023)); *see also* 28 U.S.C. § 994(o). Based on the foregoing authority, the *Jean* court found that the Sentencing Commission was acting within the bounds of its Congressionally delegated authority when it promulgated amended § 1B1.13(b)(6). *See id.* at 287–90.

Fundamental principles of vertical *stare decisis* require district courts in the Seventh Circuit to "follow the decisions of [the Seventh Circuit] whether or not they agree." *Reiser v. Res. Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (citing *United States v. Ramsey*, 785 F.2d 184 (7th Cir. 1986)); *accord. United States v. Krilich*, 178 F.3d 859, 861 (7th Cir. 1999) (per curiam). Many district court decisions say that a narrow exception exists where a district court is "powerfully convinced that the Seventh Circuit would overrule its precedent at the first opportunity." *Wilson v. Estate of Burge*, 667 F.Supp.3d 785, 882 (N.D. Ill. 2023) (quoting *Corpeno-Argueta v. United States*, 341 F. Supp. 3d 856, 863 (N.D. Ill. 2018)); *see e.g.*, *Lewis v. Gaylor, Inc.*, 914 F.Supp.2d 925, 927 (S.D. Ind. 2012).[7] Given the novelty and complexity of the issues raised by *Loper Bright* and their impact on the Sentencing Commission, this court is hardly powerfully convinced that the issues are so clear that the Seventh Circuit can be counted on to overrule *Thacker* at its next opportunity. *See generally United States v. Ponle*, 110 F.4th 958, 962–63 & n.4 (7th Cir. 2024); *United States v. Williams*, 65 F.4th 343, 348–49 & n.1 (7th Cir. 2023).

Accordingly, *Thacker* remains binding and requires this court to reject Jorge's argument for compassionate release. Nevertheless, in view of the gross disparity between Jorge's lengthy

---

[7] The Seventh Circuit's decision in *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987) is often cited as authority for the "powerfully convinced" exception. *E.g.*, *Corpeno-Argueta*, 914 F.Supp.2d at 927; *Zamecnik v. Indian Prairie Sch. Dist. No. 204 Bd. of Educ.*, 619 F.Supp.2d 517, 525 (N.D. Ill. 2007). Having read *Colby* and the language on which these district courts have relied, this court is not convinced that it is ever appropriate for it to act in contravention of Seventh Circuit authority.

8

sentence and that of his more culpable co-defendants, this court would not hesitate to follow the Sentencing Commission's § 1B1.13's policy statement had it the authority to do so. The court believed that the stacking of Jorge's § 924(c) sentences was unfair when it sentenced him. The unfairness has become more egregious in light of the fact that his co-defendants received the benefit of the First Step Act, Congress' recognition of the unfairness of stacking such sentences. In addition, having weighed the § 3553 factors and considered the period of incarceration Jorge has already served, his prison history, his culpability in this case relative to other defendants, and his proposed release plan, the court believes Jorge Uriarte's Second Motion for Compassionate Release should be granted and his sentence should be reduced to time served.

Nevertheless, in view of the Seventh Circuit's decision in *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), Jorge Uriarte's second motion for compassionate release must be and is denied.

Dated:  September 6, 2024                     /s/ Joan B. Gottschall
                                              United States District Judge